# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 04-05033-02-CR-SW-ODS |
| EMMANUEL RODRIGUEZ, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant has filed two Motions to Suppress Evidence, in which he asserts that evidence seized as a result of a search at 5165 County Lane 50, Reeds, Missouri and as a result of a search at 3411 S. Pearl, Joplin, Missouri, should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on June 21, 2005. The defendant was present with counsel, Frank A. Rubino, and the United States was represented by Robyn McKee, Assistant United States Attorney.

Defendant contends that, in the case of the warrant executed at 5165 County Lane 50, Reeds, Missouri, the reliable confidential informant was, in fact, not reliable, and that her statements regarding drugs, money, and guns located at that address were not corroborated by any of the officers. Regarding the search warrant issued for 3411 South Pearl, Joplin, Missouri, defendant contends that the information in the affidavit was wholly insufficient to establish probable cause because the only connection between the residence and methamphetamine was a scale found in the trash that had methamphetamine residue on it, and the only connection with defendant is that it is

1

claimed that he had been observed going there.  Further, defendant contends that there was an insufficient nexus to believe that drug activity, described by Jeff Bateman eight months before, was sufficient to tie it to the residence at 3411 S. Pearl.  Finally, defendant asserts that the affidavit was not sworn to before the issuing judge, and therefore, that there is a large technical defect in this affidavit.

It is the government's position that, from the four corners of the affidavits in this case, it is clear that sufficient probable cause existed to believe that controlled substances and related contraband would be located at both residences.  Additionally, it is contended that, even if probable cause were lacking, the good faith exception enunciated in United States v. Leon, 468 U.S. 897 (1984), should apply.

The government called Randee Kaiser of the Jasper County Drug Task Force.  He is the local case agent in connection with this investigation, and is employed by the Carthage Police Department.  On December 16, 2003, Officer Kaiser applied for a search warrant for the 5165 County Lane 50 address.  He prepared the affidavit, and appeared personally before Associate Circuit Judge Richard Copeland.  The Judge signed the search warrant that day.  The officer believed it to be valid prior to executing it on the residence.  In the affidavit, he set forth a summary of the facts known to him at the time.  He did not include every detail of the investigation on Yone and Emmanuel Rodriguez, which had been ongoing for at least three years prior to this time.  Rather, he included those facts that he believed were sufficient to establish probable cause.  One of the areas of information that was known to him at the time that was not included in the affidavit was regarding Jacqueline Witt.  Officer Kaiser testified that a reliable confidential informant had advised him about Jacqueline Witt.  The informant said Ms. Witt was transporting methamphetamine for

2

Yone Rodriguez. The confidential informant also verified previous information Officer Kaiser had received from other informants that Ms. Witt made short trips to California and transported methamphetamine back to Missouri. Ms. Witt was arrested at the Tulsa Airport on December 16, 2003, and gave a statement to the Tulsa authorities. Officer Kaiser referred to this statement in his affidavit. He also knew that she called Emmanuel Rodriguez from the airport; that defendant went to Tulsa pursuant to the phone call; and he was subsequently detained. He was aware that defendant had been questioned, but was not aware of what he said at that time. The following day, he learned the contents of the statement, prior to the search warrant being executed. He was also aware that Juan Gonzalez had been detained at the airport. Mr. Gonzalez stated that defendant told him to pick up Ms. Witt from the airport. He had previously dropped her off at the airport. Mr. Gonzalez advised that he went at defendant's direction. It was Officer Kaiser's testimony that he had three separate pieces of information regarding Ms. Witt transporting methamphetamine from California for defendant. Some of this was sketchy information. Other information was more specific, and included the period of time she would stay and what she was transporting the drugs for. The officer had received information from an informant that both defendant and Yone had a trailer in Reeds. Ms. Witt drew a map of the location, and the authorities in Tulsa faxed it to him. The officer testified that he took great pains to make sure he had the right location and the right address. They cross-referenced the address, which checked back to defendant's aunt. The officers locally went to the residence, by following Ms. Witt's map, and saw vehicles there. They checked the license plates from the vehicles, and one of them checked back to defendant. Officer Kaiser also included information in the affidavit that Yone Rodriguez had been stopped in California with several thousand dollars of currency and a one-way plane ticket. In his mind, this information corroborated

3

what Ms. Witt had said about Yone Rodriguez making frequent trips to California with her for the purpose of purchasing methamphetamine and transporting it back to Missouri.

Regarding the second search warrant that was served on 3411 South Pearl in Joplin, the affiant was Frank Lundien. Officer Kaiser was aware of all the facts that lead up to that search warrant, and was present when it was executed. He testified that Officer Lundien is the supervisor of the Jasper County Drug Task Force. He applied for the search warrant on December 19th. Officer Lundien faxed all the information to the Newton County Prosecutor. His affidavit was notarized prior to submitting it to the prosecutor. Based on Officer Kaiser's knowledge, the signed copies of the search warrant, the application, and the affidavit were faxed back to their office. This is standard procedure when attaining a search warrant from the Newton County judge. The search warrant was signed by Judge John LePage, who is a McDonald County Judge, sitting by designation in Newton County. At the time they executed the search warrant, he believed it was valid because the judge had signed it, and because he reviewed the facts and believed there were sufficient facts to establish probable cause. The affidavit indicates that there was a trash run at the Pearl Street residence and Wal-Mart bags with holes cut in them were found. Officer Kaiser stated that individuals who package and distribute methamphetamine frequently cut corners out of the bags and cut a circle in the bag to package small amounts of methamphetamine. This method is consistent with purchases he has made as an undercover officer. During the trash run, he also found scales that tested positive for methamphetamine, and an AT&T bill in Ms. Bateman's name, which listed three calls to California. This trash run was conducted the day the search warrant was obtained. Prior to the search, he and other officers had targeted this address. They had received information from an informant that Lisa Bateman was defendant's girlfriend, and that she and defendant were living at

4

the Pearl Street address with their child. Additionally, the officers had seen defendant there through random day and night surveillance over the previous month. The information they had did not necessarily indicate that methamphetamine was being produced at the Pearl Street address, but that defendant was distributing methamphetamine. This information came from Jeffrey Bateman, who is Lisa Bateman's brother. The statement about defendant going to Tulsa and making a written statement was not available when the first search warrant was sought, but was available and included in the affidavit for the search warrant sought on the 19th.

On cross examination, Officer Kaiser testified that he went before the judge to obtain the search warrant on the 16th for the trailer. He swore to it before the judge. The information the judge had was limited to the four corners of the document. Regarding the reliable informant, the individual advised him personally about Jacqueline Witt. The officer agreed that the confidential informant did not tell him that he or she had seen drugs at the Reeds Trailer. He did have information that Ms. Witt said she was at the Reeds Trailer before she went to California, and that she saw guns and drugs. Ms. Witt stated that defendant had sold drugs there. The affidavit indicated that defendant and Yone lived there. The information they had obtained from the confidential informant about Ms. Witt was corroborated by the officers. Regarding the statement in the affidavit that the confidential informant was "reliable," the officer stated that this is someone with a good track record with the officers. The informant did not provide any information about defendant except that Ms. Witt told the informant that she was going to California for defendant. Regarding the information from Ms. Witt, the officer agreed that she was not in the category of a reliable informant. Officer Kaiser testified that Ms. Witt cooperated with the officers in Tulsa by providing information, which was also incriminating to her. He did not advise her that her cooperation would

5

be helpful to her and would be communicated to the judge or to prosecutors. Regarding her statement that defendant and Yone lived at the Reeds trailer, the officers already had information that they were staying at a trailer in Reeds. Although he also had information about defendant living at the Pearl Street address, through his experience, it is not uncommon for individuals in such circumstances to have multiple addresses. He accepted that defendant stayed at the trailer with Yone, and stayed at the house with his girlfriend and their child. When they went to the trailer, defendant was not there. The officer testified, however, that they found evidence that defendant had been living or staying there, because there was mail with his name on it. Ms. Witt said she had been there on the 15th, but he was not able to corroborate this. He did not corroborate that she saw a drug sale there, or that she saw guns, drugs, and cash, but the information was consistent with previously received information about guns, methamphetamine, and cash at that residence. To the best of his recollection, the confidential informant never said that he or she had been in the Reeds trailer. He stated that the 911 call indicated that the address was listed to defendant's aunt.

  Regarding the search warrant for the Pearl Street address, Officer Kaiser acknowledged that Officer Lundien prepared the affidavit. Officer Kaiser was in the office when he prepared it. He knew that Officer Lundien did not take the affidavit to the judge, and he was not aware of any communication that the judge had with the officer. The signature of the officer was notarized. Officer Kaiser admitted that no one had told them specifically that drugs were located at the Pearl Street address. But, because they found the scales with methamphetamine residue, he believed this indicated there had been drugs at the house.

  The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of

6

persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source. Id. at 244-45. The reliability of a confidential informant may be established by the individual's track record of having provided reliable information, or through corroboration by independent evidence. U.S. v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998) (citation omitted). "When we review the sufficiency of an affidavit supporting a search warrant, great deference is accorded the issuing judicial officer." Id. at 400-01.

In this case, the affidavit in support of the first search warrant for 5165 County Lane 50, Reeds, Missouri, included information that there had been a three-year long investigation by the Jasper County Drug Task Force and other agencies, focused on Yone Rodriguez and defendant. The officers had intelligence reports that indicated that they frequently distributed methamphetamine. A reliable confidential informant told Officer Kaiser, the affiant, that Jacqueline Witt was going to California to pick up a large amount of methamphetamine. The officer had information that indicated that Ms. Witt only stayed in California a day or two and then flew back. It was confirmed that she bought a one-way ticket and flew from Kansas City to Burbank the morning of December 15, 2003. The officers had information that she would be flying back to Tulsa, Oklahoma. They stopped her at the airport there, and found her in possession of one to two pounds of

7

methamphetamine. Ms. Witt told the agents that she had gone to California with Yone Rodriguez on December 15, that he had $12,000 in cash, that he bought the methamphetamine, and that he gave it to her to transport. She also told the agents that Yone Rodriguez and defendant lived together at the address in Reeds, and that she had been there on the 15th. Ms. Witt told the agents that she had seen defendant sell two ounces of methamphetamine to someone on that date, and that she had seen numerous guns, a large quantity of methamphetamine, and cash there. Officer Kaiser also included the information that Yone Rodriguez had been stopped in California three weeks earlier and was found with several thousands of dollars of cash and a one-way plane ticket to an unknown destination.

Officer Kaiser testified at the hearing that the confidential informant had provided reliable information in the past, and that the information regarding Ms. Witt making frequent trips to California was corroborated by several separate sources. Additionally, he testified that Ms. Witt drew a map to the trailer, and that the officers confirmed the address and location through their own investigation. Further, in regards to the fact that Ms. Witt had not previously provided any information, he testified that she made incriminating statements and that she was not promised any favors in exchange for the information she provided. Although the officer admitted that he did not corroborate the information regarding Ms. Witt having been at the residence on the night of the 15th, he had previously received information about guns, methamphetamine, and cash at that residence. After a full review of the affidavit in support of the application for the search warrant, the Court finds that, based on the totality of the circumstances, including the statements from a confidential informant who had proven reliable in the past, corroboration of information received from several sources, and the officers' own investigation, probable cause existed to support the issuance of the

first search warrant.

Even if that were not the case, however, the Court is of the opinion that the good faith exception enunciated in United States v. Leon, 468 U.S. 897, 922-23 (1984), would apply. When making a good faith assessment, the Court must examine the totality of the circumstances, including what the officer knew but did not include in his affidavit. United States v. Chambers, 987 F.2d 1331, 1335 (8th Cir. 1993). Having reviewed the record as a whole, with the benefit of the additional information adduced at the hearing, it is clear that the officers reasonably relied on the validity of the warrant. The officers had available to them the information set forth in the affidavit, as well as the additional information about which Officer Kaiser testified at the hearing. A careful review of the evidence establishes that the officers had an objective, good faith belief that the warrant was valid and based upon probable cause. Accordingly, it will be recommended that the motion to suppress the evidence seized as a result of the search warrant issued on December 16, 2005, should be denied.

In terms of the second search warrant, for the premises at 3411 S. Pearl, Joplin, Missouri, the affidavit relies on the information obtained from Officer Kaiser regarding Ms. Witt. It contains the results of the search warrant that was executed on December 16th. The affidavit also includes additional information regarding the fact that Ms. Witt called defendant from the Tulsa Airport and told him she needed a ride back to Joplin. Defendant went to Tulsa, and was contacted by law enforcement officers there. He told them that Yone Rodriguez, his brother, had the drug connection in California. Ms. Witt stated that defendant had a girlfriend named Lisa Bateman, who lived in the area of 34th Street in Joplin, west of Main. The affidavit also provides that previously, on February 26, 2003, a Joplin Police Officer, Larry Stout, interviewed Jeff Bateman, Lisa's brother. Mr.

Bateman, who was in possession of a large amount of methamphetamine, said that his sister dated defendant, and that he got his methamphetamine from both defendant and his brother on a regular basis. The affidavit indicates that the officers conducted surveillance on the 3411 Pearl Street address and observed defendant coming and going from this location. The affiant, Officer Frank Lundien, confirmed that Lisa Bateman paid the waste water bill. On December 19, 2003, Officer Lundien examined the trash on the curb at that location and found evidence of methamphetamine packaging. He also located a set of scales, which had methamphetamine residue. Additionally, the trash contained mail addressed to Lisa Bateman, and a telephone bill with three calls made to California. Regarding the information from Jeff Bateman, although it was received in February, the officers independently corroborated his statement that his sister lived at that address. They also confirmed, through random surveillance, that defendant came and went from the residence on Pearl Street, which would support Mr. Bateman's statement that his sister lived with defendant. Additionally, Mr. Bateman was found with a large amount of methamphetamine, which he said he obtained from defendant and his brother. Ms. Witt also had told the agents in Tulsa that Lisa Bateman was defendant's girlfriend. Further, the trash run indicated that, at the least, methamphetamine was being weighed and packaged from those premises. Accordingly, based on the totality of the circumstances, the Court finds that probable cause existed to support the second search warrant.

Regarding defendant's additional challenge to the search warrant, after the hearing in this case, defendant filed a Supplemental Memorandum of Law to Previously Filed Motion to Suppress. Defendant asserts that during the testimony of Officer Kaiser, it was learned that investigator Frank Lundien did not swear to the affidavit in front of the judge. Defendant argues that, on the affidavit

for the search warrant for 3411 South Pearl, Officer Lundien's signature is at the bottom, and directly below that it states, "subscribed and sworn to me this blank date of December, '03' with a signature line for judge of the Circuit Court." [Defendant's Supplemental Memorandum at 3]. Defendant argues that although it was obviously anticipated that the affiant would appear before the judge and swear to the affidavit, that did not occur. He contends that we do not know whether the notary "simply attested that that was Frank Lundien's signature or actually swore Frank Lundien." [Id.].

The government has replied to defendant's Memorandum. It is represented to the Court that Officer Lundien is prepared to testify, should it be deemed necessary, that he did swear to the truth and accuracy of the information contained in his affidavit before the notary public. The government asserts, however, that the additional testimony is not necessary because it is clear from a review of the affidavit that Officer Lundien intended to be under oath at the time of the presentation of the application and supporting affidavit to the judge. Further, it is contended that even if the oath administered by the notary public was somehow insufficient, the officers relied in good faith on the validity of the warrant.

A review of the holdings in United States v. Workcuff, 250 F. Supp.2d 1160, 1188-90 (W.D.Mo. 2003), and United States v. Brooks, 285 F.3d 1102, 1105 (8th Cir. 2002), indicates that the proper inquiry for the Court is whether the verifying officer "intended to be under oath because his statements and actions manifested such an intention." Workcuff, 250 F. Supp.2d at 1190.

The Court has reviewed the testimony of Officer Kaiser, who was present when Officer Lundien prepared the affidavit. He testified that Officer Lundien, who is the supervisor of the Jasper County Drug Task Force, faxed the affidavit, the application, and the search warrant to Jake Skouby,

11

the Newton County Prosecutor. It was his testimony that Officer Lundien had the affidavit notarized prior to submitting it to Mr. Skouby. Larry Stout, Notary Public, notarized Officer Lundien's signature, but Officer Kaiser did not know if Mr. Stout actually swore Officer Lundien, or merely attested to his signature. The officers were faxed back the application, affidavit, and search warrant signed by the judge. It was Officer Kaiser's statement that this method is standard procedure when obtaining a search warrant from Newton County, which is some distance from the Jasper County Drug Task Force Office. At the time they executed the search warrant, he believed it was valid because the judge had signed it, and because he reviewed the facts and believed there were sufficient facts to establish probable cause.

The Court has the government's representation that Officer Lundien, if called, would testify that he did swear to the truth and accuracy of the information contained in his affidavit before the notary public. Further, the first line of the affidavit states that, "[t]he undersigned being duly sworn states to the Court. . . ." [Government's Exhibit B]. At the conclusion of the affidavit, the line appears, "Subscribed and sworn to before me this ___ day of December 2003." It is signed and dated December 19, 2003, by Larry Stout, Notary Public. The application is signed by the Prosecuting Attorney, who indicates that "being duly sworn," he makes application for a search warrant. At the bottom of the application, it is stated, "Subscribed and sworn to before me this 19th day December 2003, and is signed by the Circuit Court Judge. The search warrant itself states that the application is"duly verified by oath," and is signed by the judge. It can be concluded, accordingly, that Officer Lundien's intent was to be under oath at the time of the presentation of the affidavit and application to the issuing judge for the search warrant for 3411 S. Pearl, and that the search warrant met the constitutional requirement that it be supported by an oath or affirmation.

12

Even if this were not the case, however, the Court agrees that the warrant should not be suppressed because the officers acted with a good faith reliance on the validity of the warrant when they served it. According to the testimony of Officer Kaiser, the procedure relied upon in faxing the affidavit and the application to the prosecuting attorney in Newton County was a standard practice, given the distance between the Task Force Office and the Newton County Prosecutor's office. He also testified that he believed the search warrant was valid because the judge had signed it, and because he reviewed the facts and believed there were sufficient facts to establish probable cause. It is clear that officers relied in good faith that the warrant was valid and based upon probable cause, and the <u>Leon</u> exception would therefore apply. Accordingly, it will be recommended that defendant's motion to suppress the evidence seized as a result of the search warrant executed on December 19, 2003, be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motions to Suppress Evidence be denied.

                                       /s/ James C. England
                                       JAMES C. ENGLAND
                                       United States Magistrate Judge

Date: 9/1/05